IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| ANTONIO LAMAR DUNHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 318-018 |
| | ) |
| SAM ZANDERS, Warden; TINA | ) |
| SANDERS, Warden of Care and Treatment; | ) |
| MR. INMAN, Deputy Warden; | ) |
| MR. TREVOR, Correctional Officer; | ) |
| MR. GILBERT, Correctional Officer; | ) |
| DR. ISMAIL; MS. SMITH, Nurse; | ) |
| MS. JACKSON, Nurse; DR. PAUL | ) |
| J. SYRIBEYS; MR. WILKENS, Warden; | ) |
| DR. ALSTON; DR. KITTER; and | ) |
| MS. APRIL, Nurse, individually and in | ) |
| their official capacities, | ) |
| | ) |
| Defendants. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Central State Prison in Macon, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983 regarding events alleged to have occurred in Dodge County, Laurens County, Washington County, and Richmond County, Georgia. Because he is proceeding *in forma pauperis* ("IFP"), Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

## I. SCREENING OF THE COMPLAINT

### A. BACKGROUND

Plaintiff names as Defendants: (1) Warden Sam Zanders, (2) Warden of Care and Treatment Tina Sanders, (3) Deputy Warden Inman, (4) Officer Trevor, (5) Officer Gilbert, (6) Dr. Ismail, (7) Nurse Smith, (8) Nurse Jackson, (9) Dr. Paul J. Syribeys, (10) Warden Wilkens, (11) Dr. Alston, (12) Dr. Kitter, and (13) Nurse April. (Doc. no. 1, pp. 1-2.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

#### 1. Assault

On April 25, 2016, while Plaintiff was incarcerated at Dodge State Prison ("DSP"), Plaintiff wrote DSP Warden Zanders about being moved to a different room because his cellmate, Rashad Smith, threatened Plaintiff and "told him he had to go [be]cause he didn't trust [Plaintiff]." (Id. at 11.) Warden Zanders never responded. (Id.) On May 2, 2016, Warden Zanders inspected the dorm, and Plaintiff asked him if he received the letter. (Id.) Warden Zanders told Plaintiff he did not and instructed him to write another. (Id.) Plaintiff did so but received no response. (Id.) Warden Zanders failed to move Plaintiff despite knowing Smith had previously "bitten off a piece" of a former cellmate's ear. (Id. at 23.)

On May 10, 2016, Plaintiff returned to his room from putting his bed sheets in the laundry cart to find Smith had locked the door and would not let in Plaintiff. (Id. at 7.) Plaintiff asked Smith why Smith had not allowed Plaintiff to put on his leg brace and pants. (Id.) Smith "burst[] out of the room howling I'm tired of your shit," and attacked Plaintiff. (Id.) Smith attempted to drag Plaintiff into their room and bit Plaintiff on his hand and head. (Id.)

After Smith stopped attacking, Plaintiff went to the control booth to get medical attention. (Id.) Officers Trevor and Gilbert were not in the control booth, so Plaintiff began beating the windows of the control booth. (Id. at 8.) Officers Trevor and Gilbert, who were serving breakfast in another dorm, came into view through the window. (Id.) Plaintiff showed Officer Trevor he was bleeding from his face and hand. (Id.) Officer Trevor "turned his back on" Plaintiff, and the officers "refused to respond." (Id.)

Plaintiff saw Smith leave their room, so Plaintiff returned to the room to put on his leg brace and pants. (Id.) Smith returned, "grabbed [Plaintiff] in a headlock and stated sense [sic] I know I'm going to lockdown I'm gonna give you something to remember me by forever." (Id.) Smith "put [Plaintiff's right] ear in his mouth and ripped it completely out of [Plaintiff's] head leaving a big hole." (Id.) Plaintiff returned to the control booth and "beat on the window for several minutes" until Officer Gilbert saw him. (Id.) Plaintiff showed Officer Gilbert the injury, and Officer Gilbert called his supervisor to the scene. (Id.) The officers took Plaintiff to medical, where a nurse put Plaintiff's ear in saline and ice so it could be reattached at the hospital. (Id.)

### 2. First Ear Surgery and Post-Operative Care

Officers took Plaintiff to a hospital in Dublin, where Plaintiff received medication. (Id. at 9.) A doctor at the hospital told Plaintiff they would need to transfer him to Dr. Syribeys for surgery and Dr. Syribeys informed the doctor over the phone the ear could not be reattached. (Id.) Officers took Plaintiff to Dr. Syribeys in Macon. (Id.) Plaintiff asked Dr. Syribeys if he was sure there was no way for the ear to be reattached, and Dr. Syribeys told him "there's no way medically possible . . . ." (Id.) Plaintiff "was left with no choice but to let Dr. Syribeys do

the surgery." (Id.) After surgery, Dr. Syribeys said no follow-up appointment was necessary and the ear should stop bleeding in four days. Drs. Syribeys and Ismail and DSP Wardens Zanders, Sanders, and Inman decided not to reattach Plaintiff's ear because it was "an easier cheaper but much less effective course of treatment." (Id. at 22.)

Officers returned Plaintiff to Dodge State Prison. (Id. at 9.) Dr. Ismail ordered Nurses Jackson and April to clean the blood from Plaintiff's ear channel with cotton swabs and a mixture of saline and peroxide. (Id.) Beginning on May 16, 2016, Plaintiff complained to Dr. Ismail and Nurses April, Smith, and Jackson about extreme pain, bleeding, headaches, and loud ringing in his right ear, but they told Plaintiff nothing was wrong. (Id. at 10.) On May 19, 2016, Plaintiff was rushed back to the Dublin hospital with extreme pain and swelling in his neck. (Id.) A doctor diagnosed Plaintiff with an infection, prescribed antibiotics, and recommended Plaintiff see a specialist immediately. (Id.)

On May 23, 2016, Plaintiff was still bleeding out of his right ear. (Id.) Dr. Ismail told Nurse April to clean the blood from Plaintiff's infected ear, but she refused, saying she did not want to lose her license for performing the procedure. (Id.) Dr. Ismail had Nurse Smith clean out Plaintiff's ear instead. (Id.) Nurse April told Plaintiff she did not know why Dr. Ismail would not send him to a specialist. (Id.) After Nurse April's statement, Plaintiff began contacting family members to contact prison officials on his behalf. (Id.) "Dodge Medical and Counselor Ms. Fuqua Chief" told Plaintiff's sister Plaintiff would be sent out for treatment soon, but he never was. (Id.)

### 3. Complaints and Grievances

On May 25, 2016, Warden Zanders visited the unit where Plaintiff was located, and

4

Plaintiff informed him of his symptoms and Dr. Ismail's refusal to send Plaintiff for outside medical attention. (Id. at 11.) Plaintiff showed Warden Zanders the bleeding and asked for medical attention. (Id.) Warden Zanders said he would "see what he could do," but Plaintiff did not hear from Warden Zanders again until he denied Plaintiff's grievance regarding Dr. Ismail two months later. (Id.) By May 28, 2016, Plaintiff was "suffering from mental depression caused by extreme pain and medical neglect." (Id.) Warden of Care and Treatment Sanders came to Plaintiff's cell, and Plaintiff showed her the blood on his pillow and asked why medical was not providing additional treatment. (Id.) Warden Sanders only slammed the cell door window flap in Plaintiff's face. (Id.)

Warden Zanders had a subordinate tamper with Plaintiff's reports regarding the attack and hindered or tampered with Plaintiff's mail, grievance forms, disciplinary forms, and medical files. (Id. at 12, 22.) On June 14, 2016, Plaintiff filed a grievance against disciplinary investigator Ms. Scott for "misleading and abusing disciplinary proc[e]dures by forging and/or adding words to [Planitiff's] disciplinary forms" regarding the attack by Smith. (Id. at 12) Ms. Scott came to Plaintiff's cell after the attack to ask if Plaintiff had anything to tell Warden Zanders about the attack. (Id.) Plaintiff gave a statement to Ms. Scott, who said she would write down what Plaintiff said. (Id.) Ms. Scott gave Plaintiff a blank form to sign and told Plaintiff there would be a disciplinary hearing soon, but none ever occurred. (Id.) Dodge Prison, the Georgia Department of Corrections, administration, security, medical staff attempted to hinder Plaintiff from filing a complaint about the attack. (Id.)

#### 4. **Prison Transfer and Second Ear Surgery**

Between June 16, 2016, and June 22, 2016, Plaintiff was transferred to Washington State

Prison ("WSP") "for flooding his cell after being refused medical attention." (Id.) WSP Warden Michael Conley asked Plaintiff about the attack at DSP and told Plaintiff to write him a letter so he could investigate the matter. (Id. at 13.) Warden Conley came back a few weeks later and told Plaintiff he did not think Plaintiff was being treated fairly and he was going to do everything he could to make sure medical would stop the bleeding in Plaintiff's ear. (Id.) However, WSP counselors Ms. Roberson, Ms. Davis, and Ms. Atkins "hinder[ed] and threaten[ed]" Plaintiff for asking to see grievance responses. (Id.) They also denied Plaintiff's request for mental health assistance. (Id.)

During July 2016, Plaintiff was transferred to Augusta State Medical Prison ("ASMP"). (Id. at 14.) Dr. Bohannon ran tests and recommended surgery to open Plaintiff's ear channel, replace his right ear lobe, stop the infection, and improve hearing. (Id.) Dr. Bohannon informed Plaintiff the bleeding had almost stopped and prescribed medication for headaches and dizziness. (Id.) Dr. Bohannon also recommended the nurses stop cleaning out Plaintiff's ear with the medical swabs and said the nurses "should not have been doing that." (Id.) Dr. Bohnannon asked Plaintiff why Dr. Syribeys did not perform a follow-up evaluation. (Id.)

Dr. Bohannon tried to perform surgery on Plaintiff's ear for almost two years, but ASMP Warden Wilkens and medical administrators Drs. Alston and Kitter rescheduled and delayed surgery on November 29, 2016, May 18, 2017, and September 28, 2017. (Id.) Officials would take Plaintiff's blood and give him a pre-operation physical but they would not perform the surgery. (Id.) During the delay, Plaintiff was treated for at least eight ear infections, dizzy spells, extreme pain, migraine headaches, loud ringing in his head, head injuries from falling, and depression. (Id. at 15.)

After requesting forms for filing a lawsuit about the attack, ASMP officials decided to perform surgery on Plaintiff. (Id.) On October 7, 2017, doctors performed ear reconstruction surgery on Plaintiff's right ear. (Id.) Following the surgery, the doctors told Plaintiff at least two additional surgeries would be required to "get [Plaintiff's] ear back to satisfactory form." (Id.) However, Plaintiff refused additional surgery because "the doctors messed up [his] arm during the ear surgery." (Id.) The doctors put Plaintiff on antibiotics and pain medication to reduce the swelling and pain in Plaintiff's arm, but he continues to have extreme pain in his arm and left side. (Id.) Plaintiff has complained about the pain, but Central State Prison's medical department is ignoring his requests. (Id.) Plaintiff has written medical administrators at Central State Prison about reviewing his medical file, but they have refused to respond. (Id. at 16.)

Plaintiff seeks declaratory judgement, $100,000 in compensatory damages against each Defendant, $100,000 in punitive damages against each Defendant, and recovery of cost in this suit. (Id. at 26.)

### B. DISCUSSION

#### 1. Legal Standard for Screening.

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 327 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483,

1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

## 2. Plaintiff Fails to State a Deliberate Indifference to Safety Claim Against Defendant Zanders

Plaintiff has failed to state a viable Eighth Amendment claim against Defendant Zanders for failure to protect him from attack. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted). To establish such a claim, a prisoner "must allege facts sufficient to show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted). These three elements are evaluated in part by an objective standard and in part by a subjective standard. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014). As the Eleventh Circuit explained,

> When examining the first element—a substantial risk of serious harm—the court uses an objective standard. The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and one objective. To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm. To satisfy the objective component, a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Id. (internal citations and quotations omitted).

Because "a risk of harm to some degree always exists by the nature of its being a [prison]," not every condition rises to the level of an Eighth Amendment violation. Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga., 400 F.3d 1313, 1323 (11th Cir. 2005). However, "prison officials have a duty to protect prisoners from each other," Murphy v. Turpin, 159 F. App'x 945, 947 (11th Cir. 2005) (citing Brennan, 511 U.S. at 828-29), and

"confinement in a prison where violence and terror reign is actionable." Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014) (quoting Purcell, 400 F.3d at 1320).

Under the subjective component, "[a] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Lane, 835 F.3d at 1308. However, "[i]nferences from circumstantial evidence . . . can be used to show that a prison official possessed the necessary knowledge." Id. Under the objective component, an official responds to a known risk in an objectively unreasonable manner if "he knew of ways to reduce the harm but knowingly declined to act" or if "he knew of ways to reduce the harm but recklessly declined to act." Hale v. Tallapoosa County, 50 F.3d 1579, 1583 (11th Cir. 1995).

Plaintiff fails to state a deliberate indifference to safety claim against Defendant Zanders for not moving Plaintiff out of Smith's room. Plaintiff alleges he wrote Defendant Zanders two letters requesting transfer to a different room because Smith "told him he had to go [be]cause he didn't trust [Plaintiff]." (Doc. no. 1, p. 11.) Defendant Zanders did not receive the first letter and did not respond to the second. (Id.) Defendant Zanders knew Smith previously bit off a piece of a former cellmate's ear. (Id.)

Plaintiff fails to show Defendant Zanders had any subjective knowledge of a risk of attack against Plaintiff. Lane, 835 F.3d at 1308. While the second letter to Defendant Zanders would have arguably put him on notice of conflict between Plaintiff and Smith, there is no indication Plaintiff made Defendant Zanders aware of a threat of physical

10

violence from Smith. Indeed, Plaintiff only stated Smith told him he "had to go" because Plaintiff was untrustworthy. (Doc. no. 1, p. 11.) Furthermore, Defendant Zanders' knowledge of Smith's past violence regarding a cellmate was insufficient for subjective knowledge of a risk of an attack. Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (holding defendant not deliberately indifferent where plaintiff's cellmate was known "problem inmate" prone to violence before attacking plaintiff). Thus, because Plaintiff did not expressly communicate a substantial risk of serious harm to Defendant Zanders based on being housed with Smith, Defendant Zanders did not know of and disregard an "excessive risk to inmate health or safety." Lane, 835 F.3d at 1308. Accordingly, Plaintiff fails to state a deliberate indifference to safety claim against Defendant Zanders.

### 3. Plaintiff Fails to State a Claim Against Defendant Gilbert

Plaintiff also fails to state a deliberate indifference to safety claim against Officer Gilbert because Officer Gilbert did not have subjective knowledge of a risk of attack against Plaintiff. Although Plaintiff alleges he saw Officer Gilbert in the other dorm through the control room after the first attack, Plaintiff does not indicate Officer Gilbert saw him at that time or was aware of the injury. (Doc. no. 1, p. 8.) Thus, Plaintiff has not alleged facts to show Officer Gilbert was subjectively aware of the first attack. Furthermore, although Plaintiff complains Officers Gilbert and Trevor should have been in the control booth to help him after the first attack, Plaintiff has not alleged any facts to indicate there was a reason Officer Mathis should have been aware of a general risk to Plaintiff's health or safety, such as a reign of violence or terror in his dorm. Harrison, 746 F.3d at 1299. Finally, Gilbert immediately contacted a supervisor for help when he saw Plaintiff was hurt. (Doc. no. 1, p.

11

8.) Thus, it cannot be said Officer Gilbert knew of and disregarded an "excessive risk to inmate health or safety." Lane, 835 F.3d at 1308. Accordingly, Plaintiff fails to state a claim against Officer Gilbert.

### 4. Plaintiff Fails to State a Claim for Deliberate Indifference to a Serious Medical Need for Post-Surgery Care Against Defendants Zanders, Sanders, Ismail, Syribeys, April, Smith, and Jackson

Plaintiff fails to state a claim against Defendants Zanders, Sanders, Ismail, Syribeys, April, Smith, and Jackson for deliberate indifference to a serious medical need for treatment following surgery. To state a claim for deliberate indifference to a serious medical need, Plaintiff must allege: (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010).

To satisfy the objective component, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994)). To satisfy the subjective component, Plaintiff must allege that a defendant: (1) was subjectively aware of a serious risk of harm and (2) disregarded that risk (3) by following a course of action which constituted more than mere negligence. Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).

12

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505. Moreover, the Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment does not support a claim of deliberate indifference. See Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010). Furthermore, the Court should not second-guess medical judgments. Wallace v. Sheriff, 518 F. App'x 621, 622-23 (11th Cir. 2013); Smith, 375 F. App'x at 910 ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of

13

treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment.").

Plaintiff alleges the following facts concerning his post-surgery care. Dr. Syribeys did not see or treat Plaintiff at all after the surgery. (Doc. no. 1, p. 9, 22.) After returning to DSP, Dr. Ismail determined the best course of treatment for the bleeding in Plaintiff's ear was to have the nurses clean out the wound. (Id. at 9.) Dr. Ismail ordered Nurses April, Smith, and Jackson to clean Plaintiff's ear canal, and the nurses followed Dr. Ismail's orders. (Id.) On May 19, 2016, Plaintiff returned to the Dublin hospital for an ear infection and a doctor recommended that Plaintiff see an ear specialist immediately, but Dr. Ismail did not send Plaintiff to a specialist. (Id. at 10, 23.) Additionally, on May 23, 2016, Ms. April refused to clean the blood from Plaintiff's infected hear because she did not want to lose her license. (Id. at 10.) Furthermore, Plaintiff informed Warden Zanders and Ms. Sanders about his post-surgery symptoms and asked for additional medical treatment. (Id. at 11.) Neither Warden Zanders nor Mr. Sanders responded to Plaintiff's request. (Id.)

First, Plaintiff alleges no facts connecting Dr. Syribeys to his post-surgery treatment. In fact, Plaintiff acknowledges he never had a follow-up appointment with Dr. Syribeys after the surgery. (Id. at 22.) Plaintiff was immediately transferred back to DSP, and Dr. Ismail began post-surgery treatment the next day. (Id. at 9.) Plaintiff thus fails to state a claim of deliberate indifference to his serious medical needs regarding post-surgery treatment against Dr. Syribeys.

Next, as to Defendants Ismail, April, Smith, and Jackson, this is, at most, a case of a mere difference of opinion as to the proper course of treatment. Dr. Ismail began post-

surgery treatment of Plaintiff the day after he returned to DSP. (Id.) Plaintiff does not allege medical staff discontinued this treatment while he remained incarcerated at DSP. Although Nurse April refused to clean out Plaintiff's ear on May 23, 2016, Dr. Ismail had Nurse Smith continue Plaintiff's treatment. (Id. at 10.) Furthermore, Plaintiff had a pending consult with an ear, nose, and throat specialist while at DSP, (see doc. no. 1-1, p. 7), and Dr. Bohannon, an ear specialist treated Plaintiff soon he was transferred to ASMP, (doc. no.1, p. 14). Although Plaintiff was not satisfied by the course of treatment established by Dr. Ismail and followed by Nurses April, Smith, and Jackson, the medical care provided to inmates need not "be perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510. While other courses of treatment may have been available, the treatment Plaintiff received at DSP does not constitute the type of "unnecessary and wanton infliction of pain" prohibited by the Eighth Amendment. Estelle, 429 U.S. at 105-06. Thus, Plaintiff fails to state a claim of deliberate indifference to his serious medical needs regarding post-surgery treatment against Defendants Ismail, April, Smith, and Jackson.

Finally, Plaintiff also fails to state a claim regarding his post-surgery care against Defendants Zanders and Sanders. Although Plaintiff informed both Defendants about his symptoms following surgery, there is no indication either Defendant Zanders or Sanders had reason to believe Plaintiff was receiving inadequate medical care. Dunn v. Hart, CV 513-131, 2016 WL 5661058, *9 (S.D. Ga. Sept. 29, 2016) ("[I]n the absence of a reason to believe, or actual knowledge, that medical staff is administering inadequate medical care, non-medical prison personnel are not chargeable with the Eighth Amendment scienter requirement of deliberate indifference."). In fact, Warden Zanders noted in response to one

of Plaintiff's grievances Plaintiff had a pending consult with an ear, nose, and throat specialist. (Doc. no. 1-1, p. 7.) Thus, there is no reason to believe either Defendant Zanders or Sanders knew or had reason to believe Plaintiff was receiving inadequate medical care. Accordingly, Plaintiff fails to state a claim of deliberate indifference to his serious medical needs regarding post-surgery treatment against Defendants Zanders and Sanders

### 5. Plaintiff Fails to State a Claim Against Defendant Zanders for a Legal Mail Violation or Interference with the Prison Grievance System.

First, Plaintiff fails to state a claim for legal mail under either a denial of access to the courts or a First Amendment framework. See generally Al-Amin v. Smith, 511 F.3d 1317 (11th Cir. 2008) (analyzing legal mail violation under both access to courts and free speech).

To state a viable denial of access to the courts claim, a plaintiff must allege "actual injury"; that is, "prison officials' actions . . . must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action" and the inmate "must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." Id. at 1332 (quoting Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998); see also Terrell v. Washington, No. CV 308-088, 2009 WL 256002, at *2 (S.D. Ga. Feb. 3, 2009).

Here, Plaintiff alleges no facts at all regarding his claims concerning his mail except the conclusory statements that Warden Zanders hindered or tampered with his outgoing mail. (Doc. no. 1, p. 24.) Plaintiff does not even indicate the mail was legal in nature. Accordingly, Plaintiff's legal mail claims based on denial of access to the courts fail. Furthermore, Plaintiff fails to state a legal mail claim based on free speech. In order for an inmate to state a free

16

speech legal mail claim, he must be communicating with his attorney. See Al Amin, 511 F.3d at 1332-34. Plaintiff does not give any information about the recipient of the allegedly affected mail. (Id.) Therefore, Plaintiff's legal mail claims based on free speech also fail.

Second, Plaintiff's claims regarding Warden Zander's alleged interference with the prison grievance procedure fails. Under Eleventh Circuit law, "an inmate has no constitutionally-protected liberty interest in access to [a prison grievance] procedure." Bingham v. Thomas, 654 F.3d 1171, 1177-78 (11th Cir. 2011) (*per curiam*). Thus, any claim that Warden Zanders inappropriately interfered with Plaintiff's grievance or the subsequent investigation fails to state a claim upon which relief may be granted. Id.; see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."). Accordingly, Plaintiff's allegations regarding Warden Zander's alleged interference with his mail and grievances fail to state a claim.

### 6. Plaintiff Fails to State an Official Capacity Claim Against Defendants Zanders, Sanders, Inman, Trevor, and Wilkins.

Plaintiff sues Defendants "individually and in their official capacities." (Doc. no. 1, pp. 1-2.) However, the Eleventh Amendment bars official capacity claims against state prison officials for money damages. Kentucky v. Graham, 473 U.S. 159, 169 (1985). It is clear from Plaintiff's complaint that Defendants Zanders, Sanders, Inman, Trevor, and Wilkins are prison officials. Therefore, Plaintiff's official capacity claims against these Defendants for monetary relief fail as a matter of law and should be dismissed.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's official capacity claims against Defendants Zanders, Sanders, Inman, Trevor, and Wilkens be **DISMISSED**, Plaintiff's deliberate indifference to safety claims against Officer Gilbert and Defendant Zanders be **DISMISSED** for failure to state a claim, Plaintiff's deliberate indifference to a serious medical need claims regarding his post-surgery treatment against Defendants Zanders, Sanders, Ismail, Syribeys, April, Smith, and Jackson be **DISMISSED** for failure to state a claim, Plaintiff's legal mail and grievance claims against Defendant Zanders be **DISMISSED** for failure to state a claim, and Defendants Gilbert, April, Smith, and Jackson be **DISMISSED** from this case. In a companion Order, the Court has allowed Plaintiff's deliberate indifference to a serious medical need claim for treatment arising out of the first ear surgery against Defendants Zanders, Sanders, Inman, Ismail, and Syribeys; deliberate indifference to a serious medical need claim allegedly delaying the second ear surgery against Wilkens, Alston, and Kitter; and Plaintiff's deliberate indifference to safety claims against Defendant Trevor to proceed.

SO REPORTED and RECOMMENDED this 15th day of June, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA